**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

NICHOLAS HORST,

             Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

             Defendant.

No. 15-CV-3153-CJW

**MEMORANDUM OPINION AND
ORDER**

_____

      Nicholas Horst (claimant) seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Social Security disability insurance benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act).  Claimant alleged he was disabled because of schizoaffective disorder, migraine headaches, tinnitus, and lumbar and cervical pain.  AR 242-246.[1]  The Administrative Law Judge (ALJ) found defendant had severe impairments of degenerative disc disease, bipolar disorder versus schizoaffective disorder, personality disorder, and a history of alcohol and methamphetamine abuse.  AR 35.  The ALJ found, however, that claimant was not disabled because, despite these limitations, claimant could perform a range of work available in the economy.  AR 51-52.  Claimant argues the ALJ erred and that substantial evidence does not support the ALJ's findings.  For the reasons that follow, the court reverses the Commissioner's decision, and remands the case for further proceedings consistent with this order.

_____

[1] "AR" refers to the administrative record below.

## I.    BACKGROUND

Claimant was born in 1980; he was 28 years old at the time he allegedly became disabled, and 34 years old at the time of the ALJ's decision. AR 51, 53. Claimant completed high school and earned an associate's degree (albeit he required six years to complete a program that is usually completed in two years). AR 327-28. Claimant previously worked as an aircraft mechanic, computer technician, inspector, soil sampler, wind technician, laborer, and independent contractor. AR 247, 267. Claimant alleged his disability began on December 20, 2008. AR 33,242.

On December 27, 2013, claimant applied for disability benefits. AR 33, 95, 109, and111. The Commissioner denied claimant's application on April 9, 2014, and denied reconsideration of the ruling on September 8, 2014. AR 33. Claimant sought review by an ALJ. On March 6, 2015, ALJ Jo Ann L. Draper conducted a hearing at which claimant and vocational expert, Vanessa May, testified. AR 59-92. On April 24, 2015, the ALJ denied claimant's application. AR 33-53. On August 21, 2015, the Appeals Council denied claimant's requested review of the ALJ's decision. AR 1.

On November 30, 2015, claimant filed a complaint in this court seeking judicial review. Doc. 3. On January 25, 2016, with the consent of the parties, the Honorable Mark W. Bennett transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 8. The parties have briefed the issues and on June 14, 2016, the court deemed the matter fully submitted and ready for decision. Doc. 18.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to physical or mental impairments, the individual "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves physical or mental activities. *Id.* § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. *Id.* § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting." *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If the claimant can still do his/her past relevant work then he/she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b). Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation and citations omitted); *see* 20 C.F.R. § 404.1545(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* § 404.1545(a)(3). The

claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* § 404.1512(f). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* § 404.1545(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled. 20 C.F.R. § 404.1535.

### III.    THE ALJ'S FINDINGS

The ALJ followed the five-step process for determining whether claimant was disabled. At step one, the ALJ found claimant had not engaged in substantial gainful employment since December 20, 2008. AR 35. At step two, the ALJ found claimant had several severe impairments, including: degenerative disc disease; bipolar disorder versus schizoaffective disorder; personality disorder; and history of alcohol and methamphetamine use. *Id*. At step three, the ALJ found claimant's severe impairments did not rise to the level of meeting or equaling a listed impairment that would make him disabled. AR 36-37. At step four, the ALJ found claimant was unable to perform any past relevant work. AR 51. Finally, at step five, the ALJ found claimant's RFC would permit him to perform medium level work and that there were jobs in the economy claimant could perform. AR 37-52.

### IV.    DISCUSSION

Claimant argues the ALJ's decision is flawed for three reasons:

1.      The ALJ should have followed the holding in *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009). Doc. 15, at 11-19.

2.      The ALJ committed a so-call *Brueggemann* (*Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003)) error while evaluating the treating physicians' opinions. Doc. 15, at 19-21.

3.      A recent finding by the Department of Veteran Affairs that claimant is unemployable requires remand so that the ALJ may consider that finding. Doc. 15, at 21-23.

The court will address these arguments, separately, below.

### A.  The Pate-Fires Decision

Claimant argues that the facts in *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009), are so similar to the facts of this case that the holding there should control the outcome here.  Doc. 15, at 11.  In his brief, claimant recounts evidence in the record showing he had a history of mental illness, resulting in hospitalizations, argues that his noncompliance with taking medications is a symptom of his mental illness, and cites to the record showing consistently low Global Assessment Functioning (GAF) scores.  Doc. 15, at 11-16.  Claimant further argues that the ALJ failed to give controlling weight to his treating physicians.  Doc. 15, at 16-19.  The Commissioner argues there are differences in the facts of this case that distinguish it from *Pate-Fires*.  Doc. 16, at 8.

Claimant's argument that the holding in *Pate-Fires* controls the outcome in this case is too broad and too simplistic.  However similar the facts in *Pate-Fires* might be to the facts of this case, there are differences that prevent a blanket assertion that the holding in that case controls this one.  Rather, the court finds that it must analyze each of the distinct claims of error subsumed within claimant's broader argument that the holding in *Pate-Fires* controls this case.  With that in mind, the court identified three sub-issues: (1) whether the ALJ properly determined if claimant's noncompliance with taking his medications was a symptom of his mental illness; (2) whether the ALJ properly considered claimant's low GAF scores in evaluating whether substantial evidence showed claimant was disabled; and (3) whether the ALJ afforded proper weight to the opinions of the treating physicians.  The court will address each of these sub-issues in turn.


### 1.  Whether the ALJ properly determined whether claimant's noncompliance with taking his medications was a symptom of his mental illness

In her decision, the ALJ repeatedly noted that claimant's mental status was normal when he was compliant with taking his medication. AR 38-48. The ALJ also took into account claimant's noncompliance in taking his medication in relation to assessing the claimant's credibility. AR 48-49. Claimant argues that his noncompliance with taking medication was "intertwined" with his abuse of illegal controlled substances, but both were the result of his mental illness. Doc. 15, at 13. Claimant argues, therefore, claimant's failure to take his medication was "neither willful nor without justifiable excuse." *Id.* (quoting *Pate-Fires*, 564 F.3d at 945, and *Mendez v. Chater*, 943 F. Supp. 503, 508 (E.D. Pa. 1996)). Claimant argues he was self-medicating. Doc. 15, at 13-14. Claimant argues that the ALJ in this case did not determine whether his noncompliance with taking medication was a symptom of his mental illness. Doc. 15, at 13.

In *Pate-Fires*, the Eighth Circuit Court of Appeals held that an ALJ erred when the ALJ "failed to make the critical distinction between [the claimant's] awareness of the need to take her medication and the question whether her noncompliance with her medication was a medically-determinable symptom of her mental illness." *Pate-Fires*, 564 F.3d at 945. The *Pate-Fires* court noted that here is a distinction between whether a claimant is aware of the need to take medication, and whether the failure to do so is a manifestation or consequence of the underlying mental illness. 654 F.3d at 946. In *Pate-Fires*, the court concluded the record demonstrated that claimant's noncompliance with taking medication was the result of her mental illness. *Id.*

Although the ALJ performed an admirable job evaluating and summarizing the medical records in this case, the ALJ did not address the issue of whether claimant's failure to comply with taking medications was volitional or was a result of his mental illness. There are facts in the medical record which could lead to either conclusion. For example, Mercy Medical Center records show that in 2009, claimant was noncompliant

in taking medications because he did not like the reported side effects. AR 41. On the other hand, there is some indication in those same Mercy Medical Center records that claimant had "fair to poor insight and judgment" (AR 41), which the *Pate-Fires* Court believed showed that noncompliance with taking medication was the result of mental illness. *Pate-Fires*, 564 F.3d at 946.

Claimant insists that his noncompliance with taking his medication is a result of his mental illness, but has failed to cite to any medical evidence to support that argument. Claimant has the burden of demonstrating he is disabled through step four. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). Claimant's only citation to the medical record has to do with his use of illegal drugs. Doc. 15, at 14. Claimant asserts that his drug use is a result of his mental illness, and argues his noncompliance with taking his medication is interrelated with his use of illegal drugs. Doc. 15, at 13-14. All that may be true, but claimant does not cite any medical practitioner as saying that claimant's failure to comply with taking his medications is a result, direct or indirect, of his mental illness. Indeed, claimant suggests the record lacks such evidence, arguing that "[t]he ALJ must determine whether noncompliance with medication is a medically determinable symptom of the claimant's mental illness, which was not done in this case." Doc. 15, at 13.

On the other hand, the Commissioner's response is unpersuasive. The Commissioner argues that so long as defendant was compliant with taking his medications, he would have no need to self-medicate and claimant failed to be compliant with his medications because he abused illegal controlled substances. Doc. 16, at 10. While this also may be so, the Commissioner does not cite to any medical record showing that the illegal use of drugs led to claimant not being compliant with his medications. Further, the Commissioner does not cite any medical records debunking the theory that

claimant's mental health problems may have led him to use drugs, which may in turn lead him to stop being compliant with his medications.

The Commissioner's decision must be affirmed "if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)). If there is substantial evidence in the record as a whole to support the ALJ's findings, this court will not reverse the decision simply because there may be substantial evidence to support a contrary finding. *See Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (if the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits.") (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). It is not for this court to "reweigh the evidence presented to the ALJ," *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (internal quotation and citation omitted).

Had the court not determined that remand in this case is appropriate for other reasons it will discuss later, the court would be inclined to find that claimant has failed to carry his burden. Because the court has determined that remand is appropriate in this case on other grounds, however, it will instruct the ALJ to also address this issue. On remand, the ALJ is to develop the record to determine whether claimant's noncompliance with taking medication is a result, direct or indirect, of his mental illness and, if so, how that impacts the ALJ's credibility determination regarding claimant's statements concerning the intensity, persistence, and limiting effects of claimant's symptoms. Even if the ALJ determines that claimant's failure to comply with taking his medications is a result of mental illness, of course, the ALJ may still determine that claimant's subjective complaints lack credibility for other reasons.

**2.      Whether the ALJ properly considered claimant's low GAF scores in evaluating whether substantial evidence showed claimant disabled**

Claimant argues that the ALJ erred by not taking into account a consistent history of low GAF scores. Doc. 15, at 14-15. Claimant cites to portions of the record which reflect defendant having GAF scores between May 9, 2005, and August 14, 2014, which ranged between 20 on the low side, and 55-60 on the high side. *Id*. The ALJ's decision does not mention any GAF scores.

Claimant argues "[a]n ALJ must consider the claimant's history of GAF scores at 50 or below . . . ." Doc. 15, at 14. Claimant cites *Pate-Fires* in support of this proposition. Claimant overstates the holding in *Pate-Fires*. Nothing in that case states that an ALJ "must" consider a claimant's GAF scores. Rather, in *Pate-Fires*, the ALJ cited a single GAF score above 50 in finding a treating physician's opinion was inconsistent with the medical record. *Pate-Fires*, 564 F.3d at 944. The court properly took the ALJ to task in that case for failing to address the many other occasions where the claimant's GAF was 50 or below. *Id*.

Thus, the Eighth Circuit Court of Appeals did not hold in *Pate-Fires* that an ALJ must discuss a claimant's GAF scores at 50 or below. Indeed, the Eighth Circuit Court of Appeals has held that an ALJ's failure to mention a claimant's GAF score does not require reversal. *Wright v. Astrue*, No. 12-1198, 2012 WL 4840766, at *1 (8th Cir. Oct. 12, 2012). In any event, the ALJ's thorough review of the medical records in this case demonstrates she was aware of, and necessarily considered, claimant's GAF scores, even if she did not explicitly mention the scores in her decision. *See Bradley v. Astrue*, 528 F.3d 1113, 1115-16 n.3 (8th Cir. 2008) (concluding that the ALJ considered the claimant's GAF score when the ALJ's decision reflected the ALJ had discussed the medical records containing those scores).

11

Furthermore, claimant overstates the importance of GAF scores. "GAF scores may be relevant to a determination of disability based on mental impairments . . . [b]ut an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (internal quotation and citations omitted). The Eighth Circuit Court of Appeals has concluded that GAF scores have "little value." *See Nowling v. Colvin*, 813 F.3d 1110, 1115 n.3 (8th Cir. 2016) (citing *Jones v. Astrue,* 619 F.3d 963, 973-74 (8th Cir. 2010) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security Income] disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.")). The disfavor of GAF scores is further reflected in the current edition of the Diagnostic and Statistical Manual of Mental Disorders, which abandoned the use of GAF scores "because of, among other reasons, 'its conceptual lack of clarity' and 'questionable psychometrics in routine practice.'" AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013).

Accordingly, the court does not find the ALJ erred in failing to explicitly reference claimant's GAF scores, or that the GAF scores, in and of themselves, demonstrate that the ALJ's decision is not supported by substantial evidence in the record as a whole.

### 3. Whether the ALJ afforded proper weight to the opinions of the treating physicians

Claimant argues that the ALJ failed to give proper weight to the opinions of his treating physician and psychiatrist. Doc. 15, at 16-19. Claimant's treating physician, Dr. Arla McVicker, and his treating psychiatrist, Dr. Larry Rasmussen, each opined that defendant was unable to work. AR 1188, 1192. Claimant argues that his mental

impairments are cyclical in nature and that the ALJ improperly discounted his treating doctors' opinions by focusing on periods of relative stability. Doc. 18, at 15.

The ALJ afforded the opinions of Doctors McVicker and Rasmussen "little weight." AR 48. The ALJ explained that she found their opinions to be "rather conclusory in nature," and inconsistent with their own and other medical records, particularly when claimant was compliant with his medications and refrained from using illegal drugs. *Id*. Furthermore, the ALJ rejected these doctors' opinions to the extent they purported to opine on whether claimant was disabled or unable to work, noting that those are not medical opinions. AR 47-48. The Commissioner argues that the ALJ properly considered the opinions of Doctors McVicker and Rasmussen. Doc. 16, at 13-15.

An ALJ should only give a treating doctor's medical opinion controlling weight if the opinion is both (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) consistent with the record as a whole. *See*, *e.g.*, *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009); *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). The ALJ quite properly disregarded the doctors' opinions that claimant could not work because those were not medical opinions. Rather, that is a vocational opinion reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). When medical professionals offer opinions regarding whether someone can work or is disabled, it invades the Commissioner's province, and an ALJ need not give them any deference. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007).

There was also substantial evidence in the record as a whole to support the weight the ALJ afforded the doctors' opinions. The ALJ viewed the doctors' opinions as conclusory, and there is support for that view. For example, on a form provided by claimant's attorney, Dr. Rasmussen checked a box saying he agreed that claimant's "mental impairment [would] render him incapable of performing material and substantial

duties of any job and being gainfully employed whether or not Mr. Horst abused alcohol or drugs." AR 1188. In the space provided for an explanation, Dr. Rasmussen only referenced claimant's sporadic employment history; he did not provide a medical explanation. On the same form, Dr. McVicker checked the same "agreed" box, but in the section that provided a space for her to give an explanation, she gave none. AR 1192.

The ALJ also found medical records showed that the doctors' opinions were inconsistent with their own observations at times and inconsistent with other medical evidence. This was a proper basis for discounting the weight afforded to a treating doctor's opinion. *See, e.g.*, *Michel v. Colvin*, No. 14-3460, 2016 WL 1127929, at * 8-9 (8th Cir. Mar. 23, 2016) (finding ALJ did not err in giving little weight to physician's opinion when it was contradicted by other acceptable medical sources in the record); *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005) (internal citation omitted) (holding that a physician's opinion is entitled to less weight when it is inconsistent with the physician's own findings). Further, the ALJ reviewed the medical records and noted numerous findings by these and other medical professionals which showed claimant was stable and had unremarkable mental health status reports so long as he was compliant with taking his medication and abstained from using illegal controlled substances. AR 40-44, 48.

The court acknowledges claimant's argument that his mental health issues are cyclical in nature, and therefore, explain away stable periods in his life. The ALJ's thorough summary of the medical records, however, show she was fully aware of the nature of claimant's history symptoms and treatment. It is not for this court to second guess the ALJ's decision or substitute its own. The question before this court is not whether it would reach a different conclusion from the record. The question is whether substantial evidence in the record as a whole supports the conclusion the ALJ reached.

Whether the ALJ acted properly in discounting the weight afforded to the doctors' opinions based on claimant's use of illegal drugs is a different, albeit related, issue addressed next.

### B. The Alleged Brueggemann Error

Claimant argues that the ALJ committed a so-called *Brueggemann* error. In other words, he argues that the ALJ failed to follow the required procedures for determining whether alcohol and/or drug abuse was a material factor contributing to his disability. Doc. 15, at 19-21. Claimant maintains the error was not harmless and that this matter should be reversed and remanded for further proceedings.

In 1996, Congress amended the Social Security Act to eliminate benefits for disabilities arising from addiction to alcohol or other drugs. *See* Contract With America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847 (1996); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (discussing the 1996 Congressional amendment). The regulation implementing this law, as it relates to applications for disability insurance benefits, appears at 20 C.F.R. § 404.1535. It provides as follows:

> How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> > (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the

determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

   (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

   (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535.

According to the regulations, the ALJ must first determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1535, ("*If* we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). In other words, "[t]he ALJ must reach this determination initially . . . using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694 (internal citation omitted). Thus, "[t]he inquiry [at step four] concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established." *Id.*

16

If the ALJ determines that all of a claimant's limitations, including limitations arising from substance use disorders, show that the claimant is disabled, then the ALJ "must next consider which limitations would remain when the effects of the substance use disorders are absent." *Brueggemann*, 348 F.3d at 694-95 (citing *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2)). "The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause." *Pettit*, 218 F.3d at 903 (citations omitted). The claimant carries the burden of proving that alcoholism or drug addiction is not a material factor to the finding of disability. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). "If the ALJ is unable to determine whether substance abuse disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. . . . In colloquial terms, on the issue of materiality of alcoholism, a tie goes to [the claimant]." *Brueggemann*, 348 F.3d at 693 (citation omitted). Accordingly, the ALJ is required to develop a full and fair record and support his or her conclusions with substantial evidence. *Id.* at 695. In summary, "[o]nly after the ALJ has made an initial determination (1) that [the claimant] is disabled, (2) that drug or alcohol use is a concern, and (3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may [the ALJ] then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability." *Id.*

In this case, the ALJ did not determine whether claimant's substance abuse was a contributing factor material to the determination of disability because the ALJ did not first find that claimant was disabled under the five-step sequential test. *See* 20 C.F.R. § 404.1535. In other words, because the ALJ did not find claimant disabled, it was unnecessary for the ALJ to perform the analysis for determining whether drug addiction

or alcohol abuse was a contributing factor material to the determination of disability. *See Brueggemann*, 348 F.3d at 694; *see also* 20 C.F.R. § 404.1535 (providing that an ALJ must first determine whether a claimant is disabled, using the five-step test, before proceeding to consideration of whether alcohol or drug abuse is a material contributing factor to the disability determination).

The question in this case, though, is whether the ALJ, nonetheless improperly, discounted opinions about claimant's limitations by segregating the effect of claimant's substance abuse before reaching the decision of whether claimant was disabled. In *Brueggemann*, the ALJ erred at step four when he mistakenly believed that he could not consider the effect alcohol abuse had on the claimant's ability to work. The ALJ, therefore, discounted the opinion of a doctor who opined that the claimant's alcohol abuse caused him to have "no useful ability to handle stress." *Brueggemann*, 348 F.3d at 692-93.

The ALJ in this case never explicitly rejected a medical opinion that claimant had limitations directly related to his substance abuse; rather, the ALJ concluded that claimant was not disabled so long as he refrained from abusing substances and took his medications. Specifically, the ALJ concluded: "Most notable, records revealed the claimant's psychiatric symptoms improved while remaining compliant with medications and abstaining from using methamphetamine. While the undersigned finds the claimant would continue having some symptoms even while not using substances, the record failed to support any further limitations than outlined above." AR 50. At step four, the ALJ's focus should have been on symptoms, regardless of whether the symptoms were caused by substance abuse. Yet, the ALJ notes that claimant's symptoms improved when claimant was not abusing substances. In the next sentence, the ALJ appears to be conducting an analysis of whether, absent substance abuse, claimant was still disabled. As noted, however, the ALJ never found claimant disabled, so the ALJ should have had

18

no need to determine what limitations would remain were she to disregard his substance abuse.

Thus, although the ALJ's analysis in this case is different from the ALJ's analysis in *Brueggemann*, it appears that the ALJ still considered claimant's substance abuse at Step Four. The ALJ discounted the testimony of claimant's treating doctors because, in the ALJ's opinion, claimant did not suffer symptoms so long as he refrained from abusing substances and took his medications. When the ALJ found claimant's substance abuse was a severe impairment, then the ALJ should have considered any limitations arising from that impairment instead of assessing claimant's limitations when claimant refrained from abusing substances. The ALJ erred when she segregated the effects of claimant's substance abuse in determining whether claimant was disabled. *See Carpenter v. Astrue*, No. C09-2061, 2010 WL 3156065, at *11-12 (N.D. Iowa Aug. 9, 2010) (internal citation omitted)(finding the ALJ erred when "she segregated out the effects of [the claimant's] alcohol abuse in making her disability determination . . . [and] improperly deducted the 'assumed effects' of [the claimant's] alcohol abuse from [the claimant's] medical limitations.").

As in *Brueggemann*, "the ALJ's abbreviated decision-making on the [substance abuse] issue deprives [the court] (and the Commissioner) of a solid record on this point." *Brueggemann*, 348 F.3d at 695. There is evidence in the record of claimant's hospitalization for, and symptoms arising from, his substance abuse. Claimant asserts that his substance abuse caused him to be noncompliant with his medication. Based on the record at this point, the court cannot conclude that the ALJ would necessarily have reached the same conclusion had she treated claimant's symptoms from substance abuse just the same as she did claimant's symptoms from his other severe impairments.

Accordingly, the court must remand this case for further proceedings. The ALJ is instructed to fully develop the record regarding claimant's substance abuse and its

impact, if any, on his compliance with taking his medication. The ALJ is further instructed to evaluate the opinions of the treating doctors and the extent of claimant's limitations based on all of the symptoms the ALJ finds exist, without regard to whether the symptoms arose from substance abuse. If, as a result of this analysis, the ALJ finds claimant disabled, then the ALJ should go on to determine which limitations would remain when the effects of the substance use disorders are absent, and whether those remaining impairments are disabling.

### C. The Recent VA Finding of Unemployability

On March 28, 2016, the Department of Veterans Affairs ("VA") determined that claimant was entitled to individual unemployability "effective September 27, 2012." Doc. 15-1. The VA's determination came after the Appeals Council denied review of claimant's case on August 21, 2015. AR 1. Claimant argues that the court should remand this case "[b]ecause a reasonable likelihood exists that the ALJ would decide the claim differently after reviewing the VA's recent rating decision . . . ." Doc. 15, at 23.

The ALJ did address evidence from the VA. AR 45-46. The ALJ noted that the VA assigned claimant a 70% disability rating based on claimant's schizoaffective diagnosis during a hospitalization in 2009. *Id*. The ALJ stated: "Significantly, as discussed throughout this decision, treatment notes indicated substantial improvement following these remote hospitalizations where the claimant complied with medical treatment and abstained from using substances." AR 46. The ALJ also stated: "Of note, there was no decision on 'Individual Unemployability' . . . ." *Id*. Accordingly, the ALJ gave "no weight" to the VA's disability ratings. *Id*.

A disability determination by the VA is not binding on an ALJ considering a Social Security applicant's claim for disability benefits. *See Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996). Nevertheless, "findings of disability by other federal agencies, even

though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision." *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). As the Commissioner points out, remand is appropriate for consideration of new evidence only if it is "material" and there was good cause for the failure to incorporate the evidence into the record during a prior proceeding. *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (citing 42 U.S.C. §405(g)). New evidence is material if it is non-cumulative, relevant, probative of claimant's condition during the time period for which benefits were denied, and there is a reasonable likelihood that the evidence would have changed the Commissioner's decision. *Id*.

The Commissioner concedes that claimant could not have raised this decision in prior proceedings, and that it is probative of claimant's condition during a time period for which benefits were denied. Doc. 16, at 17. The Commissioner does not claim the evidence is irrelevant or cumulative. The Commissioner does argue, however, that there is "no reasonable likelihood it would have changed the Commissioner's decision." Doc. 16, at 18. The Commissioner points out that "almost all of the evidence [the decision] cites as the basis for the unemployability was available to and expressly considered by the ALJ in her decision." *Id*.

The court need not guess in this case whether the VA's decision would have changed the ALJ's decision, as claimant adamantly claims it would, or whether the VA's decision would not have made any difference, as the Commissioner equally adamantly claims it would not. Because the court has found that remand is appropriate in this case, the ALJ will have an opportunity to address the VA's decision and make that determination in the first instance.

### D. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> [W]here the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper "where the total record overwhelmingly supports a finding of disability").

In the present case, the court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the court finds the ALJ failed to follow the proper procedure under the Social Security regulations, for considering substance abuse when making a disability determination.

Accordingly, the Court finds that remand is appropriate. Because the court has found remand appropriate, the ALJ will also have an opportunity to determine: (1) whether claimant's noncompliance with taking medication is a result, direct or indirect, of his mental illness and, if so, how that impacts the ALJ's credibility determination regarding claimant's statements concerning the intensity, persistence, and limiting effects of claimant's symptoms; and (2) whether the VA's Individual Unemployability determination changes the ALJ's decision.

## V. CONCLUSION

The court has found the ALJ committed procedural error in her otherwise thorough examination of the record in this case. The error is understandable given the difficulty of properly evaluating the interrelated issues of mental illness, substance abuse, and compliance with taking medications under a protocol that calls upon the ALJ at first to ignore the source of claimant's symptoms, then requires the ALJ to consider the impact of substance abuse in causing claimant's limitations. When the ALJ fully develops the record and reanalyzes this case, she may or may not reach the same conclusion that claimant is not disabled. It is proper that the ALJ do this, however, rather than this court make that determination based on the record as it currently exists. Accordingly, this case is reversed and remanded to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

**IT IS SO ORDERED** this 27th day of October, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa